UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Criminal No.  05-412  (EGS) |
| v. : | |
| : | Motions Hearing: February 22, 2005 |
| **JOSEPH A. WASHINGTON, JR.** : | |
| : | |
| **Defendant.** : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS TANGIBLE EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Tangible Evidence.  In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding the motion.

**Factual Summary**

1.   The defendant is charged in a one-count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. §922(g)(1).  This charge arose out of the defendant's arrest on October 18, 2005 within the District of Columbia.  At a hearing or trial in this matter, government counsel expects the evidence for this charge to demonstrate substantially as follows:

2.   On October 18, 2005, at approximately 8:00 p.m., officers from the Metropolitan Police Department (MPD) were on patrol in the area near the xxxxxxxxxxxxxxxxxxxxxxxxxx Washington, D.C.  Undercover officers in an unmarked vehicle were waiting at the intersection of Olive and Polk Streets, NE when they observed a light blue Lincoln circle the block a total of three times.  The first two times, the vehicle's headlights were on.  The third time, officers noticed that

the vehicle's headlights were off, and it was being operated at a high rate of speed by a lone black male. They observed the vehicle pull up to the intersection and stop. The undercover officers next observed the black male pull a black mask down over his head and speed off towards Kenilworth Avenue, NE. The undercover officers gave a lookout for the defendant and said vehicle while they followed it to a "BP" gas station located at xxxxxxxxxxxxxxxxxxxxxx. The police pulled into the "BP" gas station behind the blue Lincoln and observed the defendant, Joseph A. Washington, get out of the car with the black mask pulled down over his head[1], while walking away from the Lincoln. The defendant began to walk toward two other black males on the scene.

3.      One of the police officers walked up to the Lincoln and saw in plain view, sitting on the front passenger seat of the Lincoln, a short barreled shotgun. The defendant was stopped by

---

[1] D.C. Code § 22-3312.03, entitled "Wearing hoods or masks," provides in pertinent part:

(a)  No person or persons over 16 years of ago, while wearing any mask, hood, or device whereby any portion of the face is hidden, concealed, or covered as to conceal the identity of the wearer, shall:
(1) Enter upon, be, or appear upon any lane, walk, alley, street, road highway, or other public way in the District of Columbia;
(2) Enter upon, be, or appear upon or within the public property of the District of Columbia; or
(3) Hold any manner of meeting or demonstration.

(b) The provisions of subsection (a) of this section apply only if the person was wearing the hood, mask, or other device:
...(3) With the intent to intimidate, threaten, abuse, or harass any other person;
(4)  With the intent to cause another person to fear for his or her personal safety, or, where it is probable that reasonable persons will be put in fear for their personal safety by the defendant's actions, with reckless disregard for that probability; or
(5) While engaged in conduct prohibited by civil or criminal law, with the intent of avoiding identification.

A violation of D.C. Code §22-3312.03 is a misdemeanor punishable by 180 days imprisonment, a $500.00 fine, or both, under D.C. Code §22-3312.04. (2001 ed.)

another police officer and placed under arrest. The short barreled shotgun was recovered and found to be a Remington, Model 1100, 12 gauge shotgun. Two Winchester cartridges were recovered from the shotgun, one from the chamber and one from the tube. The barrel measured approximately thirteen and one half inches, while the total length of the shotgun was approximately twenty-six inches. The gun recovered was test fired and found to be operable. This type of gun and ammunition are not manufactured in the District of Columbia

4.  The police ran various checks on the Washington Area Law Enforcement System (WALES) which revealed that the license plate displayed on the blue Lincoln, MD JHB727, actually belonged on a 2000 Mazda, that the vehicle was not properly registered, and that the defendant's license was suspended. The police issued Notices of Infraction for Unregistered Automobile and Operating After Suspension.

5.  Incident to the defendant's arrest, a search was conducted of the blue Lincoln, revealing within the center console a piece of newspaper with a green weed substance. This substance field tested positive for THC, the active ingredient in marijuana. The police also recovered the black mask referenced above, identification cards in the name of Joseph Washington, and four cellular telephones.

6.  Several days later, on October 27, 2005 at approximately 7:40 pm, the police executed a valid search warrant on the defendant's home address, xxxxxxxxxxxxxxx, Washington, D.C., Inside the home the police found marijuana, identifications, a glass plate with white residue on it, multiple empty ziplock bags, and razor blades with residue on them.

**Argument**

**The Officers Had Probable Cause to Arrest the Defendant and Search the Vehicle**

1.      In his Motion to Suppress Tangible Evidence the defendant asserts that his arrest was without probable cause, and therefore, the evidence must be suppressed.  For the reasons which follow, the United States respectfully submits that defendant's motion should be denied as a matter of law.

2.      Based upon the plain view doctrine, the officers had probable cause to seize and search the vehicle.  Looking at an object or item in plain view does not constitute a search.  See generally, e.g., Florida v. Riley, 488 U.S. 455, 451-452 (1989); California v. Ciraolo, 476 U.S. 207, 215 (1986).

3.      Seizure of an object in plain view is lawful if: (1) the police did not violate the Fourth Amendment in arriving at the place from which the object is viewed; (2) the object's incriminating character is immediately apparent; and (3) the police officer has a lawful right of access to the object seized.  California v. Horton, 110 S. Ct. 2301 (1990).  The fact that a flashlight is used does not mean that an object was not in plain view.  United States v. Dunn, 480 U.S. 294, 305 (1987); Texas v. Brown, 460 U.S. 730, 739-740 (1983) (plurality opinion).  In this instance, the officers approached the defendant's vehicle, which was parked on a public gas station area, and observed in plain view through the car window and its opening a short barreled shotgun on the front passenger seat.

4.      Accordingly, the officers were justified in seizing the vehicle and the lone occupant driver, and conducting a warrantless search to recover the gun and any other contraband in the vehicle.  It is a well established principle that people have a lesser expectation of privacy in their vehicles, and that the police may search a vehicle without a warrant where they have probable cause

to believe that evidence of a crime is located inside. California v. Carney, 471 U.S. 386, 391 (1985). The so called "automobile exception" to the warrant requirement is justified based upon this lesser expectation of privacy and the automobile's ready mobility. Id.; See United States v. Pettiford, 293 F. Supp. 2d 22 (D.D.C. 2003) (upholding warrantless police seizure and search of parked vehicle which had the engine running where officers observed a handgun on the driver's side floorboard in plain view).

5. The facts of this case are somewhat similar to those in United States v. Christian, 187 F.3d 663 (D.C. 1999). In Christian, an officer from the MPD observed Christian standing next to a vehicle which was parked in an area known for narcotics dealing and stolen property. Id. at 665. When Christian became aware of the officer's presence he threw two objects through the vehicle's window, which was partially open. Id. Suspecting that criminal activity was afoot, the officer then approached Christian and the vehicle, at which time he looked through the window of the vehicle and observed a dagger in plain view. The officer then obtained the keys to the vehicle from Christian and searched the interior, discovering a loaded handgun inside a bag. Id.

6. In upholding the search and seizure, the court stated that the officer had reasonable suspicion to conduct a protective sweep for weapons inside the vehicle based upon the defendant's previously observed conduct, the presence of the dagger, and the defendant's close proximity to the vehicle. Id. at 668-69. The court held that based upon these observations, the officer was justified in searching the vehicle in order to protect his safety, finding that the interior of the vehicle was within the defendant's immediate control. Id. The court also noted that the reason that the officer did not have probable cause (as opposed to reasonable suspicion) to search the vehicle and arrest the

defendant upon observing the dagger was due to the fact that possession of a dagger, by itself, was not illegal. Id. At 667.

7.  Under these aforementioned principles, the officers in the instant case were justified in detaining the defendant while they secured the gun that was inside the vehicle, as well as to ensure that he was not carrying a weapon on his person. Furthermore, given that the officers had probable cause to search the vehicle because they had observed the gun in plain view, probable cause to arrest the defendant most certainly arose when they discovered identification documents in the defendant's name inside of the vehicle. Thus, assuming there was only reasonable suspicion justifying the Terry stop when the defendant exited the vehicle, the encounter developed into probable cause to arrest once the officers found evidence inside the vehicle linking the defendant to the vehicle. Furthermore, unlike in Christian, in the instant case, the justification to search the vehicle was based upon probable cause, because it is illegal to drive around the District of Columbia with a short barreled shotgun in your front seat.

8.  Additionally, in Thornton v. United States, 541 U.S. 615 (2004), the Supreme Court held that New York v. Belton, 453 U.S. 454 (1981) governs even where the officer first makes contact with the vehicle's occupant after he has already left the vehicle. Several other circuits have addressed the issue of a warrantless search of an unoccupied vehicle based upon probable cause, and have upheld such searches. United States v. Reed, 26 F.3d 523, 529-30 (5th Cir. 1994) (upholding warrantless search of unoccupied parked vehicle based upon exigent circumstances where vehicle was emitting a radio signal from money that was taken during a bank robbery); United States v. Foxworth, 8 F.3d 540, 545 (7th Cir. 1993) (holding that police may conduct warrantless search of unoccupied vehicle based upon probable cause under the "automobile exception" where the vehicle

is found in a place "readily accessible to the public" and not regularly used for residential purposes); United States v. McCoy, 977 F.2d 706, 710-11 (1st Cir. 1992) (upholding warrantless search of parked van where officers had received information that the van belonged to the defendant, who was seen driving it near the location of a burglary, and officers could see a clock inside the van in plain view that fit the description of a clock reported stolen during the burglary).

9. The arrest of the defendant was supported by probable cause. It is axiomatic that the police may arrest someone without first obtaining an arrest warrant where the police have probable cause to believe that person is committing or has committed a criminal offense. Florida v. White, 526 U.S. 559 (1999). Probable cause must be evaluated in terms of the totality of the circumstances, as viewed by a reasonable and prudent police officer in light of his or her training and experience, that would lead the officer to believe that a criminal offense had been or is being committed. See United States v. Green, 670 F.2d 1148 (D.C. Cir. 1981); Brinegar v. United States, 338 U.S. 160 (1949). In this case, prior to the defendant being arrested, the police saw in plain view a short barreled shotgun. Significantly, the defendant was seen as the lone occupant of the car, driving down the street with his headlights off before he exited the car at the gas station. Once at the gas station, the defendant was once again seen as the lone occupant of the car, getting out of the car. Accordingly, when the officers observed the shotgun on the seat, they had probable cause to believe that the defendant was the person in control of the vehicle, if not its owner, and thus the individual to whom the gun belonged.

10. Even if the officers did not have probable cause to arrest the defendant at the point that he got out of the vehicle, they most certainly had reasonable suspicion to conduct a Terry stop to determine the defendant's relationship to the vehicle, as well as to the weapon inside the vehicle.

Furthermore, the officers were justified in securing the defendant, so that he could not obtain access to the gun while they continued the investigation. It is well settled that a police officer may briefly detain a suspect if he has a reasonable articulable suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1 (1968). Articulable suspicion is substantially less than probable cause, but more than a mere hunch or generalized suspicion. United States v. Sokolow, 490 U.S. 1 (1989) (requiring some minimal level of objective justification). A Terry stop also encompasses a frisk for weapons where the officer "has reason to believe that the suspect is armed and dangerous." Adams v. Williams, 407 U.S. 143, 146 (1972). As stated above, the officers certainly had reasonable suspicion that the defendant was the owner of both the vehicle and the gun when he got out of it alone, and was seen driving the car previously, also alone. Furthermore, the officers had reasonable suspicion to believe that the defendant was armed and dangerous given their knowledge about the presence of the gun inside the vehicle.

11.  The aforementioned authority establishes that upon seeing the gun inside defendant Washington's vehicle, the officers had probable cause to seize and search the vehicle, and could do so without first obtaining a warrant. Furthermore, once the officers observed the defendant get out of the subject vehicle, they had probable cause to believe that the defendant had control over the vehicle, as well as the gun observed on the seat.

12.  The defendant's motion to suppress also should be denied because the defendant failed to make any claim in his motion establishing standing to challenge the search of the vehicle. It is well settled that the party seeking to challenge the admission of evidence seized from a particular location on the grounds that such evidence was obtained in violation of the Fourth Amendment must establish a legitimate privacy interest in the location searched. United States v.

Salvucci, 448 U.S. 83 (1980).  It is well settled that a defendant may claim the benefits of the exclusionary rule only if his or her own constitutional rights have been violated; he or she cannot vicariously assert the rights of others.  Rakas v. Illinois, 439 U.S. 128, 134 (1978).  The defendant makes no such claim regarding the vehicle in his motion to suppress.  Accordingly, the defendant has no standing to challenge the search of the vehicle.

WHEREFORE, the government respectfully requests that the Court deny defendant's motion to suppress tangible evidence.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
BAR NO.  451058

ROBERT J. FEITEL
ASSISTANT UNITED STATES ATTORNEY
D.C. BAR NO. 433-180
FEDERAL MAJOR CRIMES SECTION
202.353.3706

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing United States Opposition to Defendant's Motion to Suppress Tangible Evidence is to be served upon counsel for the defendant, Mary Manning Petras, Esquire, this 19th day of January, 2006.

 

                                  ROBERT J. FEITEL  
                                  ASSISTANT UNITED STATES ATTORNEY