UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 05-412 (EGS) |
| : | |
| JOSEPH A WASHINGTON, JR. : | Sentencing Date:  August 1, 2007 |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing in the above-captioned case. For the reasons set forth herein, the government respectfully recommends that the Court sentence Defendant, Joseph Washington, Jr., to a period of incarceration of no less than the mid-point of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") range of 84-105 months.[1]

**I.      BACKGROUND**

On October 18, 2005, at about 8 p.m., officers of the Metropolitan Police Department, while driving an unmarked police vehicle, observed Defendant, who was operating a light blue Lincoln automobile, pull to a stop at the intersection of Olive and Polk Streets, N.E., Washington, D.C. Police watched as Defendant pulled a black mask over his face and drove off at a high rate of speed towards Kenilworth Avenue, N.E.  The windows of the car were rolled up and the weather was fairly warm.  The officers immediately gave a lookout for the car and followed it to a BP gas station, located in the 1500 block of Kenilworth Avenue, N.E.  There, Defendant pulled into the station

---

[1] See section II.B., infra.

parking lot and parked near a gas pump. Defendant, the only occupant of the vehicle, got out of the car and removed the mask, then began walking in the direction of several individuals. At that time, one of the officers who had followed Defendant to the station walked up to the car and observed, in plain view on the front passenger seat, a sawed-off Remington 12-gauge shotgun. The barrel of the shotgun measured 13.5 inches in length, and the overall length of the gun was 26 inches. The gun was also loaded with two shotgun cartridges. Once police saw the sawed-off shotgun, Defendant was stopped and placed under arrest. Defendant clearly did knowingly and intentionally possess the shotgun on October 18, 2005, as he was within arms reach of the gun while he drove the vehicle and the gun was in plain view.

Furthermore, at the time that Defendant possessed the sawed-off shotgun described above, he had been previously convicted of at least one crime punishable by imprisonment for a term exceeding one year. (See, *e.g.*, D.C. Superior Court Criminal Case Number F-7771-95). Moreover, the shotgun in this case meets the definition of "firearm" as defined by 18 U.S.C. § 921, for purposes of 18 U.S.C. § 922(g), and the shotgun cartridges are "ammunition" also as defined by 18 U.S.C. § 921. Finally, both the shotgun and the cartridges were manufactured outside of the District of Columbia, and were shipped, transported or delivered through interstate or foreign commerce to reach the District of Columbia.

## II.   SENTENCING CALCULATION

### A.   Statutory Minimum/Maximum

The maximum term of incarceration for the charge of Unlawful Possession of a Firearm and Ammunition by a Convicted Felon, a Class C Felony, is 10 years. In addition, the fine range for the offense is from $10,000 to $100,000. See Pre-sentence Report ("PSR") at ¶¶ 82, 96.

B.   United States Sentencing Guidelines Calculation

The PSR writer in this case, U.S. Probation Officer Renee Moses-Gregory, has correctly calculated the Defendant's total offense level (base offense level of 26, minus 3-level reduction for acceptance of responsibility and timely notifying government of intent to plead guilty) to be 23 and his criminal history category to be V. PSR ¶¶ 12-19, 21-30. Thus, under these calculations, the Defendant's Guideline range for imprisonment for a violation of 18 U.S.C. § 922(g)(1) is 84-105 months. USSG Chapter 5, Part A; see PSR ¶¶ 28-30, 83. Here, the Court should impose a sentence of no less than the mid-point of the applicable Guideline range.

C.   The Impact of Booker

In United States v. Booker, 125 S.Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S.Ct. 2531 (2004). The Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 124 S.Ct. at 764. The Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Booker, 124 S. Ct. at 766. "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker 124 S. Ct. at 767 (citing 18 U.S.C. §§ 3553(a)(4)&(5) (Supp. 2004)). In light of this

mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guidelines range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals. This is so, said the court in United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their

democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 950. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in section III below, no unusual circumstances exist that warrant an exception to the preference for a Guidelines sentencing in this case.

### III. DEFENDANT SHOULD BE SENTENCED TO A TERM OF INCARCERATION AT THE MID-POINT OR GREATER OF THE APPLICABLE GUIDELINES RANGE OF 84-105 MONTHS

The government recommends that the Court sentence Defendant to a term of incarceration of no less than the mid-point of the applicable Guidelines range of 84-105 months. Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but it would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant. United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005).

To begin with, Defendant's illegal conduct here is very serious and represents a real and

present danger to the community. Indeed, the facts are extremely disturbing – shortly after dusk, Defendant was observed driving around the streets of the District of Columbia with a loaded, sawed-off shotgun by his side, wearing a ski mask. As noted above, Defendant's windows were observed to be up and, according to police, the weather was fairly warm. Thus, the strong implication here is that, rather than trying to keep warm, Defendant was preparing to commit an armed crime of violence, such as robbery, carjacking, or assault. And, while one might be quick to argue here that the government's assertion is mere speculation, it should be noted significantly that Defendant's criminal history includes arrests, in 1995 and 1996, for Assault with a Deadly Weapon. PSR ¶¶ 31, 40. A Guidelines sentence range would certainly reflect the seriousness of this dangerous and seemingly sinister conduct. In addition, it would take into account the need to protect the community from the potentially destructive effects of Defendant's actions.

Defendant's conduct moreover reflects a lengthy pattern of violent or potentially violent criminal behavior that dates back more than a decade. As the PSR indicates, Defendant already has three prior felony convictions, for possession with intent to distribute cocaine in 1995, escape in 1997, and a violation of the Bail Reform Act, also in 1997. Also, Defendant is no stranger to the illegal possession of firearms, as he was convicted in 1993 of Carrying a Pistol Without a License. Moreover, the probation on which Defendant has been placed following his several convictions has been revoked on two occasions, and, indeed, he was serving a sentence at the time the instant offense was committed (see USSG § 4A1.1(d); PSR ¶¶ 22, 27, 29). All of this suggests that Defendant is someone who is not likely to be rehabilitated in the future. In summary, the applicable Sentencing Guidelines here correctly take into account Defendant's prior convictions, his probation violations, and the fact that he was receiving a sentence at the time of this offense. Thus, a sentence of

incarceration at no less than the mid-point of the applicable Guidelines range of 84-105 months is both reasonable and appropriate. Finally, inasmuch as Defendant has already received the benefit of the bargain as a result of accepting the government's plea offer in this case, sentencing Defendant within the applicable Guidelines range also gives Defendant, as well as the government, the benefit of the bargain negotiated.[2]

**IV.    CONCLUSION**

In summary, the advisory Guidelines range in this case provides for a reasonable sentence, one that takes into account the relevant sentencing factors set forth in 18 §3553(a).[3] The government

---

[2] Indeed, Defendant's Guidelines range takes into account his early acceptance of responsibility, for which he has received a three-point decrease in his offense level. See PSR ¶ 19. Had the defendant not received this benefit, his Guidelines range for incarceration would have been 110-137 months, rather than 84-105 months.

[3] It is the government's position that 18 U.S. C. § 3553(a)(2)(1), which directs that the sentencing court consider "the nature and circumstances of the offense and the history and characteristics of the defendant," should not be read to mean that the sentencing court should take into account all of the defendant's personal characteristics in imposing a sentence of incarceration. Congress, in enacting the Sentencing Reform Act, specifically prohibited certain personal characteristics from being considered in sentencing. Thus, sentences cannot be based on a defendant's race, sex, national origin, creed or socioeconomic status. See 28 U.S.C §944(d). Other characteristics can be taken into account only to the extent they are relevant. Id. Congress specifically directed that the Commission assure that the guidelines reflected "the general inappropriateness" of considering certain factors, including the defendant's family ties and responsibilities, and community ties, in recommending terms of imprisonment. 28 U.S.C. § 944(e).

Thus while Congress contemplated that a defendant's age, family ties and responsibilities, community ties and similar factors may be appropriately considered with respect to incidents of sentencing other than incarceration, for example, the length and type of community service, the amount of a fine, or the conditions of probation, it recognized that these same factors have no place in determining whether and for how long a defendant should be imprisoned. We recognize that post-Booker, the Sentencing Guidelines are advisory. Nevertheless, the Guideline provisions with respect to limitations of factors to be considered in imposing sentence clearly reflect the will on Congress on this issue, see 28 U.S.C. § 944(e), therefore, we respectfully ask that these factors be given appropriate consideration by the Court.

therefore respectfully requests that the Court impose a sentence of incarceration at no less than the mid-point of the applicable Guidelines range of 84-105 months, a term of supervised release as provided by statute, and any other terms and conditions that the Court deems appropriate.

        Respectfully,

        JEFFREY A. TAYLOR
        United States Attorney

             /s/
        _____
By:    Donnell W. Turner
        Assistant United States Attorney
        Maryland Bar
        Federal Major Crimes Section
        555 4th Street, N.W.  #4235
        Washington, DC 20001
        Tel. (202) 305-1419
        Fax (202) 514-6010